## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No.  11-150 (JRT/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| DENNIS GALE CHASE, | |
| Defendant. | |

Dennis Gale Chase, No. 15824-041, FCI-Elkton, Post Office Box 10, Lisbon, OH  44432, *pro se*.

James S. Alexander, Kimberly A. Svendsen, and Laura M. Provinzino, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN  55415, for plaintiff.

On December 22, 2011, Dennis Gale Chase ("Chase") was convicted of three counts of transportation of child pornography and three counts of possession of child pornography.  He is currently serving a 292-month sentence.  Chase brings this motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging ten grounds for relief.  The Court finds that some of the grounds alleged in this motion involve substantially the same issues that were decided in the direct appeal of Chase's conviction, which cannot be re-litigated on a motion to vacate pursuant to Section 2255.  Additionally, to the extent that the Court considers the merits of Chase's other grounds, the Court finds Chase's arguments unavailing.  For these reasons, the Court will deny the petition.

**BACKGROUND**

## I.   FACTUAL BACKGROUND

From April 18, 2009, through June 22, 2009, the National Center for Missing and Exploited Children ("NCMEC") received reports from a file-sharing website, Ning.com, via the CyberTip line, that 26 videos of child exploitation had been uploaded to its website from an account associated with the email address ForWillieBoy@hotmail.com. (Appl. & Aff. for Search Warrant ¶ 30, Sept. 8, 2009, Docket No. 1.)  FBI Special Agent Richard T. Holden ("SA Holden") viewed the material submitted by Ning.com to NCMEC, including three videos, and confirmed that they contained recordings of the sexual exploitation of children.  (*Id*. ¶¶ 35-37.)

On May 5, 2009, the FBI served an administrative subpoena to Hotmail requesting the IP addresses used to access the ForWillieBoy@hotmail.com email account.  (*Id*. ¶ 31.)   On May 11, 2009, the FBI served an administrative subpoena to Charter Communications requesting identifying information for the IP addresses provided by Hotmail.  (*Id*. ¶ 33.)  Charter Communications then informed the FBI that Chase was the holder of the account associated with the IP addresses connected to the email account ForWillieBoy@hotmail.com.   (*Id*. ¶¶ 33-34.)   Holden subsequently conducted surveillance on Chase's home in Winona, Minnesota.  (*Id*. ¶ 38.)

On September 9, 2009, law enforcement executed a federal search warrant at Chase's home.  SA Holden conducted a search of the apartment and noticed that a series of nude or partially nude pictures of young boys was visible on Chase's computer screen.

(Trial Tr. ("Trial Tr. I") at 33-34,[1] Sept. 18, 2012, Docket No. 116.)   Additionally, SA

Holden discovered that the file sharing program GigaTribe was running on the computer.

(*Id.*)   While agents searched Chase's home, Chase was interviewed by SA Holden and

Winona Police Investigator Josh Squires.   (*Id*. at 41-43.)   In that interview, SA Holden

recalled that Chase admitted that his email address was ForWillieBoy@hotmail.com, that

he had shared roughly 24 child pornography videos on the Ning.com website, and that he

viewed child pornography on a daily basis. (*Id.* at 43-45.)   Chase disputes this account.

The FBI then seized his computer and external hard drive.   (*Id.* at 46.)   Images and videos

of children engaging in sexually explicit conduct were found on both.   (*Id.* at 82-83, 107-

10.)

On February 17, 2010, Chase brought a different computer into Buerck's

Computer Repair Shop in Winona.   (Appl. & Aff. for Search Warrant ¶ 42, May 10,

2010, Docket No. 1.)   Chase asked Brian Buerck ("Buerck"), the owner of the computer

repair shop, to examine the computer to determine why it would not operate.   (*Id.*)

Additionally, Chase said that he wanted to recover some photographs of a construction

site that were stored on the computer.   (*Id.*)   While searching the computer for the

construction site photographs, Buerck discovered photographs of children engaged in sex

acts. (*Id.* ¶ 43.)   Buerck then called the Winona Police Department to report his findings,

and explained that he believed the photographs had been downloaded to the computer on

February 9 and 12, 2010. (*Id.* ¶ 44.)   On February 19, 2010, Buerck met with Winona

---

[1] Unless otherwise noted, the Court will use CM/ECF pagination, instead of the internal
and continuous pagination of the trial transcript.

Police Officer James Sjoberg at the computer repair shop.  (*Id.*)  Officer Sjoberg arrested Chase when he walked into the repair shop while Buerck and Officer Sjoberg were speaking.  (*Id.* ¶ 45.)  Chase was later released.  (*Id.*)

Between March and April 2011, three different FBI agents downloaded child pornography from Chase's account on a different file-sharing site, GigaTribe, as part of an ongoing undercover investigation.  (Trial Tr. ("Trial Tr. II") at 36, 66, 84, Sept. 18, 2012, Docket No. 117.)  The agents observed Chase sharing child pornography on GigaTribe under the username "Willielover."  (*Id.* at 83, 88.)

On May 4, 2011, SA Holden executed a warrant to search Chase's home for a second time and to arrest him.  (Trial Tr. I at 51-52.)  Chase was nude when SA Holden arrived at his residence.  (*Id.*)  SA Holden discovered additional images of child pornography in Chase's apartment, including on two thumb drives.  (*Id.* at 55-62.)  SA Holden interviewed Chase for a second time, and Chase stated that he had been sharing child pornography files for about three years.  (*Id.* at 58-61.)  Chase additionally explained that he typically categorizes his child pornography and he places them in folders so it is easier for other users to download from him.  (*Id.* at 61.)  At the end of the interview, SA Holden arrested Chase and transported him to a detention facility in St. Paul.  (*Id.* at 62.)

## II.   PROCEDURAL BACKGROUND

On May 2, 2011, a grand jury indicted Chase with one count of receipt of child pornography and two counts of possession of child pornography.  (Indictment, May 2,

2011, Docket No. 5.)   On October 4, 2011, a grand jury returned a superseding indictment charging Chase with three counts of transportation of child pornography and three counts of possession of child pornography.   (Superseding Indictment, Oct. 4, 2011, Docket No. 42.)

Prior to the superseding indictment, United States Magistrate Judge Janie S. Mayeron held a hearing on the parties' pretrial motions on July 18, 2011, during which she considered Chase's motion to suppress physical evidence and motion to suppress statements, admissions, and answers.   (Minute Entry, July 18, 2011, Docket No. 32.) Following the hearing, the Magistrate Judge issued an R&R, recommending denial of both motions.   (Report & Recommendation ("R&R"), Aug. 22, 2011, Docket No. 36.) This Court later adopted the R&R.   *United States v. Chase*, No. 11-150, 2011 WL 4954623 (D. Minn. Oct. 18, 2011).

The case went to trial on December 20, 2011.   (Trial Tr. I at 1.)   At trial, the Court rejected Chase's request for an entrapment jury instruction.   (Trial Tr. II at 133, 144-46.) On December 22, 2011, a jury found Chase guilty of all six counts.   (Special Verdict Form, Dec. 22, 2011, Docket No. 88.)

Following Chase's conviction, the District Court ordered a presentence investigation report ("PSR").   Chase objected to the PSR's application of a 5-level sentencing enhancement to Chase's sentencing guidelines calculation.   (Def's Position on Sentencing at 2, June 10, 2012, Docket No. 100.)   The PSR applied the 5-level enhancement found in U.S.S.G. § 2G2.2(b)(3)(B) for "distribution [of child pornography] for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain."

In this case, the PSR concluded that Chase was distributing child pornography on file-sharing sites for the receipt of a thing of value – more child pornography – in return.

On June 14, 2012, this Court held a sentencing hearing at which the Court also considered Chase's motion for acquittal. (Sentencing Tr. at 4-5, Sept. 18, 2012, Docket No. 119.) Chase argued that his motion for acquittal should be granted because he was entrapped, the FBI made false statements which prejudiced his legal interest, and he was denied a fair trial due to ineffective counsel. (*Id.* at 4-33.) Chase also argued that applying the 5-level enhancement was improper, because he did not expect to receive anything in return for the images he posted. (Def.'s Position on Sentencing at 2-3.)

This Court denied the motion for acquittal, determining that there was insufficient evidence of entrapment and that the performance of counsel was not deficient or prejudicial. (Sentencing Tr. at 40-42.) The Court also rejected Chase's objection to the 5-level enhancement, applied that enhancement and others, and ultimately sentenced Chase to prison for a total term of 292 months, followed by 20 years of supervised release. (Sentencing. J., June 18, 2012, Docket No. 107.)

On June 28, 2012, Chase timely appealed. (Notice of Appeal, June 28, 2012, Docket No. 109.) The Eighth Circuit affirmed Chase's conviction and sentence. *United States v. Chase*, 717 F.3d 651, 652-53 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 975 (2014). The Court found that probable cause supported the search warrant used to search Chase's residence. *Id.* at 653. It also affirmed the Court's decision not to instruct the jury on entrapment, noting that "Chase [had] presented no evidence to show that the government induced him, and the evidence established that Chase was predisposed to commit the

offense." *Id.* Consequently, the Court affirmed the denial of Chase's motion for acquittal. *Id.* Finally, the Court affirmed the application of the 5-level enhancement to Chase's sentence. *Id.* at 653-54 ("In this case, the government met its burden by presenting evidence that Chase knew he was using a file-sharing network. Chase failed to provide concrete evidence of his ignorance as to distribution. Further, the government established that Chase expected to – or did – receive a thing of value in exchange for distributing child pornography."). On January 13, 2014, the Supreme Court denied Chase's petition for a writ of certiorari. (Notice, Jan. 29, 2014, Docket No. 137.)

On January 12, 2015, Chase filed this *pro se* Motion to Vacate under 28 U.S.C. § 2255. (Mot. Under 28 U.S.C. § 2255, Jan. 12, 2015, Docket No. 138.) Chase alleges the following grounds for post-conviction relief:

> **Ground One:** Chase was entrapped and did not receive a fair trial because the Court did not allow the entrapment defense. (*Id.* at 4.)

> **Ground Two:** Chase's trial and appellate counsel were ineffective. (*Id.* at 5.)

> **Ground Three:** Chase's due process rights were infringed by the government's submission of false testimony to the grand jury. (*Id.* at 7.)

> **Ground Four:** The 5-level "thing of value" sentencing enhancement was applied in error. (*Id.* at 8.)

> **Ground Five:** Chase's Fourth and Sixth Amendment rights were violated when defense counsel did not advocate for, and the Court did not grant, a *Franks v. Delaware*, 438 U.S. 154 (1978), hearing to probe dishonest statements by law enforcement about Chase uploading images to Ning.com. (*Id.* at 14.)

> **Ground Six:** The prosecutors and police made false statements about Chase uploading images to Ning.com. (*Id.*)

**Ground Seven:** Chase's rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated when the government did not disclose exculpatory evidence, including five allegedly missing emails. (*Id.*)

**Ground Eight:** Defense counsel was ineffective in not seeking to suppress evidence of video uploads because the search warrant lacked probable cause. (*Id.*)

**Ground Nine:** Chase is "innocent" of uploading files to Ning.com. (*Id.*)

**Ground Ten:** Defense counsel was ineffective by poorly arguing to suppress statements Chase made to the police while he was inebriated. (*Id.* at 15.*)*

Chase argues that, at a minimum, the facts as to many of these grounds are ambiguous or in flux. As a result, he also seeks an evidentiary hearing. (Reply to Government Resp. to Chase's Mot. to Vacate at 20-21, May 18, 2015, Docket No. 147.)

## DISCUSSION

## I.    STANDARD OF REVIEW

Section 2255 allows a federal prisoner a limited opportunity to seek post-conviction relief on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Eagle v. United States,* 742 F.3d

1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

## II.   CLAIMS ALREADY RESOLVED ON APPEAL

As noted above, the Court will not reach in a Section 2255 motion claims already resolved on direct appeal.  *See, e.g.*, *Eagle*, 742 F.3d at 1081-82; *English v. United States*, 998 F.2d 609, 613 (8th Cir. 1993) ("In the absence of an intervening change in the law, or newly discovered evidence, we will not reconsider any claim that was resolved on direct appeal in a section 2255 habeas proceeding.").

At a minimum, Grounds One, Four, Five, and Eight were raised and decided in the direct appeal of Chase's conviction, and are therefore barred from consideration.  *See English*, 998 F.2d at 613.   In his direct appeal, Chase argued that (1) there was insufficient probable cause to support the initial search warrant – specifically that the connection between Chase and Ning.com was tenuous at best; (2) the denial of an entrapment jury instruction deprived Chase of a fair trial; (3) there was insufficient evidence to support his convictions; and (4) the application of the U.S.S.G. § 2G2.2(b)(3)(B) enhancement was unreasonable.  *Chase*, 717 F.3d at 652.

Here, Chase makes substantially the same arguments in some of his grounds.  In Ground One, Chase again challenges the Court's denial of his request for an entrapment instruction.  (Mem. in Supp. of § 2255 ("First Chase Mem.") at 11, Feb. 17, 2015, Docket No. 141.)  In Ground Four, Chase asserts yet another challenge to application of the 5-level enhancement to his sentence.  (*Id.*)  Finally, in Grounds Five and Eight, Chase again

argues, by way of a challenge to his attorney's performance, that there was insufficient evidence underlying the search warrants used to search his residence.  (*Id.*)  Each of these arguments was considered and properly rejected on appeal.  *Chase*, 717 F.3d at 653-54. As a result, the Court will not consider them further and will deny Chase's Section 2255 motion as to each of them.

## III.    GOVERNMENT MISCONDUCT

Construing Chase's *pro se* motion liberally, the Court will consider his remaining grounds on the merits.  In Grounds Three, Six, and Seven, Chase targets what he alleges is government misconduct throughout the proceedings.  The Court will consider, and reject, each ground in turn.

In Ground Three, Chase argues that that the false testimony by law enforcement improperly influenced and manipulated his grand jury proceedings.  Specifically, he argues that law enforcement agents lied when they stated that Chase had uploaded explicit material to Ning.com and that he downloaded child pornographic videos onto DVDs.  Because of these allegedly false statements, Chase argues that his due process rights were violated.  This ground fails, however, because Chase offers nothing more than bare assertions and conclusory allegations that are not supported in the record.  Indeed, in the first search warrant application, SA Holden's recounting of the investigation makes clear that it was Chase who uploaded child pornographic images to Ning.com, not conspiring law enforcement officers.  More is required than bald accusations of conspiracy by Chase to mandate dismissal of an indictment.  *United States v. Wilson*,

565 F.3d 1059, 1069 (8th Cir. 2009) ("Grand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." (internal alterations and quotation marks omitted)).  Moreover, any errors in grand jury proceedings are generally rendered harmless by a subsequent petit jury guilty verdict, as in this case.  *Id.* at 1070.

Similarly, in Ground Six, Chase argues that SA Holden lied about Ning.com uploads and DVDs at trial.  This ground fails for much the same reason.  Without any support in the record, Chase seeks relief merely by alleging that a vast law enforcement conspiracy retaliated against him and uploaded images and videos in his name.  Without more to support this argument, the Court will not conclude that Holden was lying under oath at trial.[2]

Finally, in Ground Seven, Chase argues that his due process rights were violated under *Brady v. Maryland* when the government withheld exculpatory evidence.  More specifically, Chase asserts that the government did not disclose five emails that Chase alleges would show that he was framed or entrapped.  In *Brady*, the Supreme Court held that the prosecution violates a defendant's due process rights by failing to disclose evidence that is both favorable to the accused and material to the accused's guilt or punishment.  373 U.S. at 87; *see also United States v. Kime*, 99 F.3d 870, 882 (8th Cir.

---

[2] Chase's argument that he is actually innocent of the Ning.com uploads, at Ground Nine, also fails.  First, he again offers only bare assertions to support this argument.  Moreover, as the government correctly notes, the indictment was based on possession and transportation of child pornography separate and apart from the alleged uploading to Ning.com.  To the extent Chase claims these allegations about Ning.com led to his indictment on other child pornography charges and infected his entire proceedings, Chase again offers no record evidence or legal authority to support his claims.  As a result, the Court will deny Chase's habeas petition as to this ground.

1996).  Evidence is "material" under Brady "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  Here, the record demonstrates that the government provided Chase with every email law enforcement examiners found.  (*See, e.g.*, Aff. of Kimberly A. Svendsen ¶¶ 3-10, May 26, 2015, Docket No. 150.)  Moreover, Chase provides no support to indicate that the allegedly missing emails would have been material to the jury's decision to convict him.  Therefore, the Court finds no *Brady* violation.  In sum, the Court will deny Chase's Section 2255 motion as to these three grounds.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, in Grounds Two and Ten, Chase raises several arguments in support of his claim that both his trial counsel and his appellate counsel provided ineffective assistance of counsel.  In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir. 1996).  Under *Strickland*, there is a "strong" presumption that the attorney's representation was competent and that the challenged decisions constituted permissible strategic and tactical choices.  *Strickland*, 466 U.S. at 689.

## A.     Entrapment

Chase alleges that his defense counsel was ineffective for failing to assert properly an entrapment defense and for failing to argue sufficiently that law enforcement, and not Chase, were responsible for uploads to Ning.com.  The Court will reject this argument.

Here, Chase provides no evidence showing that his counsel's actions were unreasonable. To the contrary, the record shows that his attorney competently argued for an entrapment instruction at multiple points.  Specifically, his attorney sought an entrapment jury instruction.  (Def.'s Req. for Jury Instrs. at 2, Nov. 30, 2011, Docket No. 67.)  The attorney also argued for the instruction prior to trial, at which point the Court provided him with an opportunity to further develop evidence to support an entrapment defense.  (Trial Tr. I at 3-6.)  While counsel may not have argued fervently that direct evidence demonstrated that law enforcement was posting images to Ning.com to implicate Chase, that was a strategic decision that reflected the fact that no such evidence existed.  (*Id.* at 3-4.)  Nevertheless, Chase's attorney continued to argue for the entrapment defense later as well.  (*See* Trial Tr. II at 133, 144-46.)  Indeed, the Court explicitly acknowledged at sentencing the attention given to the entrapment issue:

> On entrapment, we had lengthy discussions about this during the trial.  I thoroughly considered **the efforts by Mr. Nolen** to have an entrapment defense raised and an entrapment instruction given to the jury.
>
> The Court must act as a gatekeeper in those matters, and the Court found then and continues to find now that there was insufficient evidence of entrapment in order to permit the defense to be raised to the jury.
>
> I mean, in particular, I would have to find that there was no intent or predisposition to commit the crime charged, that it was induced, persuaded by an agent, and I cannot find that given all of the substantial evidence in

this case.   So I will adhere to my earlier finding as to the entrapment
defense.

(Sentencing Tr. at 40-41.)

Given how aggressively Chase's attorney worked to pursue an entrapment defense, premised on the theory that law enforcement was posting and uploading images under Chase's name, the Court cannot conclude that Chase's performance was unreasonable.   Moreover, as to any of the other allegations of ineffective assistance of counsel found in Ground Two, Chase has not shown that, even if his attorney's performance was deficient, an entrapment instruction would have changed the outcome of his case.   Indeed, the Court notes that the amount of evidence presented against Chase at trial was substantial and voluminous, and that Chase had the opportunity to articulate his theories to the jury.   In sum, the Court will deny Chase's habeas petition as to Ground Two.

## B.      Suppress Statements

Chase also argues in Ground Ten that his attorney was ineffective for failing to argue sufficiently that Chase's statements to the police should have been suppressed since he was intoxicated.   Here again, given the thorough cross examination by defense counsel of SA Holden on the stand, (Trial Tr. I at 52-53), Chase has not shown his attorney's performance was deficient.   As already stated above, he also has not shown that he was prejudiced in any way by his attorney's performance, if it was deficient.   As a result, the Court will deny Chase's motion as to Ground Ten.   And, because the Court will deny Chase's motion on all grounds, and finds no need for an evidentiary hearing, it will also

deny Chase's request for a hearing. *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) ("A § 2255 petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." (internal quotation marks omitted)).

## V.      CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Copeland v. Washington,* 232 F.3d 969, 977 (8th Cir. 2000). To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings. *See Flieger v. Delo,* 16 F.3d 878, 882-83 (8th Cir. 1994). The Court finds it unlikely that another court would decide the issues raised in Chase's motion differently. The Court concludes that Chase has failed to make the required substantial showing of the denial of a constitutional right and will therefore not grant a certificate of appealability.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Chase's Motion to Vacate Pursuant to 18 U.S.C. § 2255 [Docket No. 138] is **DENIED**.

2.     Chase's request for an evidentiary hearing [Docket No. 147] is **DENIED**.

3.     The Court does not certify for appeal under 28 U.S.C. § 2253(c) the issues

raised in Chase's motion

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   October 19, 2015                              s/ John R. Tunheim
at Minneapolis, Minnesota.                        _____
                                                            JOHN R. TUNHEIM
                                                               Chief Judge
                                                    United States District Court